The next case for argument is 23-1644 S v. HHS. 23-1644 S v. HHS May I approach? Oh, yes, please. Good morning.  Please proceed whenever you're ready. Thank you. May it please the court, the petitioner is here to challenge the ruling denying the fact that a vaccine, HPV vaccine, caused an autonomic neuropathy. We are not here asking the court to re-weigh the evidence. Our position is, the petitioner's position is that the chief special master, in rendering his decision, ignored evidence of record that directly contradicted his findings. He found- When you say ignored, do you mean that he never referenced it in his opinion, or that he mistreated it? Yes, even, yes, Your Honor. We mean that, but we also mean that even if the chief special master references evidence, referencing alone does not mean it was adequately considered. So for instance, he concludes that the petitioner, JS, had some kind, quote, some kind of mental disorder. He ignores the fact that six weeks after the onset of symptoms, JS had a complete psychiatric workup. And a neurologist said that her condition was more likely a rheumatologic condition. Can I? Yes. Do you agree that in order to succeed on this appeal, you need to win on both cognizable injury and also medical theory of causation? We understand that. And in our brief, we address the fact that the chief special master himself said that he did not do a full, often analysis because he didn't need to, because there was no cognizable injury. And then he also said, well, I've heard this expert in other cases. I've considered this issue. And based on that, I don't need a hearing. I don't need to consider anything. What is the standard of review? The standard of review is arbitrary, capricious, or contrary to law. It's real, however. How do we assess what seems to be the centerpiece of your argument, which is that he didn't adequately consider things? I mean, under an arbitrary and capricious standard, that's a pretty tough sell, right? We agree that we have to overcome that standard, the obstacle of that standard. In Palak v. HHS, this court said that the court has a duty to ensure that the special master has properly applied the Vaccine Act evidentiary standards, considered the relevant evidence of record, drawn plausible inferences, and articulated a rational basis for his decision. OK, nobody's going to argue with that. But if you apply that, then we're saying he ignored evidence of record, he drew inferences, the chief special master diagnosed the petitioner with, quote, some kind of mental disorder based on emergency room preliminary assessments of anxiety. Anxiety can be a physiological cause or psychological. And the considered opinion of a neurologist and psychiatrist that this was not psychogenic. Counsel, can you point us to a particular part of the appendix where you say this chief special master did exactly what you just contended? Well, he refers to a mental disorder, some kind of other kind of mental disorder, at appendix 70. And that disorder is not defined in the medical record, conspicuously undefined. So that's where the special master said those words, some kind of mental disorder. Respectfully, that is not an appropriate finding by chief special master when there is evidence of inappropriate sinus tachycardia based on objective testing, a Holter monitor testing, a ZEO patch. But he dealt with that evidence, and he analyzed it, and said it was insufficient or not probative. And are you saying that we would also have to conclude that his decision was arbitrary and capricious or not based on any plausible theory or evidence, right? Yes. The court would have to find that in order to. OK, well, I mean, it's a lengthy opinion. There are lots of details. It's a lot of medical terminology. But he went through the record, which is pretty lengthy. He went through all of the diagnosis or all of the observations made of the petitioner through the early years. And it's up to you to prove why that's wrong and why he erred. And it was arbitrary and capricious. And I'm not getting it. I mean, what in the opinion? Are you pointing to something he did in the opinion, or are you pointing to his failure to do something that wasn't in the opinion? First of all, he summarily denied a hearing. We did not have a chance to. As Your Honor said, the volume of the record is huge. The issues in the record are multiple. And what is the standard for our deciding whether or not you're saying we should overturn it because he denied you a hearing? I don't recall seeing a case like that. So I don't know what we do with respect to the denial of request for a hearing. The case is where a special master, even if he gives lip service to certain parts of the record or ignores other parts of the record, that it's an insufficient analysis that doesn't properly grapple with the facts of the case when a neurologist says, this is not psychogenic. A psychiatrist says, this is not psychogenic. But emergency room doctors say, anxiety. For the special master then to diagnose the petitioner with some kind of mental disorder, that, we submit, is arbitrary and capricious. It's not a sufficient analysis of the evidentiary record. Can you show me where the special master diagnosed the petitioner with that? That is the same reference. He said some other. It was a vague and amorphous diagnosis. Quote, some other kind of mental disorder. I'm not seeing it. Can you just turn to the page and point me to it? I have it in appendix 7. It's on the third paragraph, bottom of the third paragraph. Thank you, Your Honor. Instead, preponderant evidence strongly supports the conclusion that some other kind of mental disorder explains her symptoms. Well, there was a lot of, he talked early on about all of that evidence. I mean, is he not stating the record evidence fairly? We submit he's not. Now, I'm not saying that he's not stating the record evidence as a chief special, there's extraordinary discretion given to the special masters. Right, and he did an extraordinarily detailed job. I mean, how many pages is this? I mean, it's tens and tens of pages. And he goes through all of the evidence, including a very detailed description of your doctors, Dr. Steinman's view, and Dr. Lafayette, or somebody else, or Dr. Lefkowitz. Lefkowitz, their cardiologist. And there's enormous detail provided for everything they said, and his consideration of everything they said, and the basis for his rejecting it. Now, you may disagree as to the basis for his rejecting it, but we've got a pretty high standard of review, right? There is a high standard of review. However, when a special master is given the extraordinary powers that he has, which is more than any trial judge anywhere, more than any jury. He is judge, jury, and he can marshal the evidence any way he wants, but he ignores essential components of the record that directly contradict his finding. That, we submit. That's in every single one of these vaccine cases. There's evidence for the petitioners, and then the government puts in evidence from other doctors that the petitioner's claim isn't proven. And the special masters accept one version, or they accept the other. And it's not arbitrary or capricious just because he didn't believe your experts, and didn't believe the evidence provided by your side, is it? I would say. You keep saying ignored. Is it clear that he actually specifically failed to even consider evidence, or he just didn't agree with the evidence you put forward? No, I think it's the former. I submit it's the former. So you think that you put in evidence that this special master specifically refused to read? I can't say that. I can't. No, you can't, because it's not on the record. And he said he's considered the voluminous record, and we've got to presume that he's done the job. Well, you don't have a statement saying, I'm not reading this report, because I don't think it should have been allowed. Of course not. But if you have extreme circumstances, where is it? You have circumstances, which is you think you have really good evidence, but there's other evidence suggesting that the injury is not attributable to the HPV vaccine. You think yours is this strong, and that theirs is this strong, but the special master disagreed. When have we ever found something like that arbitrary and capricious? When the special master elevates the standard that's required, standard proof of factual proffer that's necessary. So he did that here. He found that because there was no evidence of antibodies within 1 to 10 days of the vaccination, that then the evidence was inconsistent. When did he change the standard? I mean, this paragraph we were just talking about. Well, that's what you just said. When you answered my question, you said he elevated the standard of proof. He applied the preponderance standard, right? Right, but he imposed a burden on the petitioner that the petitioner could never meet, no petitioner could ever meet it. That's improper. In other words, he gave lip service to the fact that he applied an arbitrary and capricious standard. But if you impose evidentiary burden on the petitioner that's so high it could never be met, there's nothing in it. How do you know that such a high burden was imposed on the petitioner? Because the special master said that because there was no evidence of antibodies within 1 to 10 days, there's nothing in medicine, nothing in the record  Where is that in the record? That's not on page 70 that you cited, right? No, it's not on page 70. I don't know where it is right now. It's in the decision. But isn't your evidence of antibodies way too late? Isn't that what he was trying to say is? That you came forward with this antibody test, which he doesn't credit because it's way too late in the game. There's nothing wrong with that, is it? We disagree with it. That doesn't mean anything. The medical evidence is contrary to that. He didn't hold a hearing, so I couldn't hear why the expert would say antibodies don't develop overnight. They don't develop within 1 to 10 days. That would be the evidence we proffered. We proffered that in the expert reports. Isn't your antibody test like two years later? Well, there were antibodies much sooner than that. Eventually, the petitioner was diagnosed with autoimmune conditions, stiff man syndrome, and undifferentiated connective tissue. I mean, this goes to the point of whether he ignored it or whether he didn't deal with it adequately. I just happened to find it on the appendix 28. This is the Court of Claims review, where she says, or he says, the special master clearly considered petitioner's antibody testing between 2016 and 2020, but did not find it persuasive. And then she quotes the decision. I give little weight to the testing results petitioner obtained in 2020, almost five years after her vaccination and nearly four years after the case was filed, suggesting blah, blah, blah. So one, he clearly considered it. And two, he gave a reason for rejecting it. Now, are you, on an arbitrary, on our standard of view, saying that we should reverse the decision because he was wrong in his evaluation of that information? No, obviously, we couldn't reasonably ask the court to do that. We're maintaining our position that he ignored record evidence that had to be dealt with and was totally contrary to his conclusions, specifically with respect to a mental disorder. OK. Why don't we hear from the government? Thank you. I don't want to be sure if it was dealt with. Good morning. May it please the court, my name is Zoe Wade, and I represent the Secretary of Health and Human Services. And today, I'm asking you to affirm the chief special master's decision denying entitlement because the special master's findings that the petitioner did not carry her burden to show that she suffered a vaccine injury and did not provide a reliable causal theory are both supported by the evidence of record. Can you just turn to, because we don't need to go through a lot of the stuff that wasn't raised before with your friend. But his main argument, or one of his main arguments, seems to be the diagnosis that, allegedly, the special master made with respect to a mental disorder. So can you address that? I can address that. So I think that the petitioner has characterized the special master's findings as being a diagnosis. I think he simply aggregated the various opinions that were replete throughout the records from various providers that she had some kind of psychological underpinnings to her symptom presentation, whether that was anxiety, panic attacks. She was also, at one point, considered psychosomatic seizures, et cetera, that there were a multitude of providers who associated her symptoms with something akin to anxiety or panic attacks. So what do you understand your friend's concern and complaint with the special master having done that? I think that he is characterizing it as attaching a diagnosis. And that, but I guess I don't agree with that characterization. I don't think that's a fair claim. Well, what leeway does the special master have in these circumstances? I mean, I don't read it as being his own diagnosis. But is he allowed or not allowed to go through the record and determine what the various diagnoses along the way by medical examiners who saw her were, and to include or rely on that? Well, he is certainly required to consider the entire record. So he is required to consider all of that information. And what I think he found is that the number of instances where her symptoms were associated with her presenting, for example, immediately after her HPV vaccine the very next day, she presented to the emergency department. And she complained of having a panic attack. Her mother, who is a registered nurse, also said that's what, that's how she described what she observed. She reported being under stress, that she was moving away to college, and that she was having, and she was discharged with a diagnosis of an anxiety reaction. And so all of her symptoms appear to be, at least in these initial days immediately following the vaccine, to be related to a panic attack, which is a mental diagnosis. It is a mental disorder. Or it is at least a panic attack is a single incident. But panic disorder, anxiety disorder, whether they're Now, is he required, I'm sorry, I don't get enough of these cases. So I'm not up on all of the details of the legal requirements. Would the special master have been required to come up with an alternative diagnosis in order to prevail here? No, and I don't believe that he did. I don't think his primary, I guess he did in two respects. With respect to the diagnosis of POTS, and inappropriate sinus tachycardia, he did make the comment that these credible instances of providers associating her symptoms with anxiety, panic disorder, psychosomatization, what have you, that that undercut a finding that she had sustained anything that would be considered inconsistent with a vaccine injury. So on the one hand, he weighed that evidence and it undermined the conclusion that the petitioner was  But he did also then go on and say that if he was forced to find, if the burden were to shift to the respondent, he would also find that there was sufficient evidence of an alternate cause for her symptoms. So do you all. Counsel, opposing counsel repeatedly said that evidence was ignored and the like. Can you also respond to that? I don't think that's accurate. Obviously, I think I agree with the court's interpretation that the evidence, he thoroughly explained what the evidence was and then analyzed it. And so I just don't think that, I think that the dispute that the petitioner has raised is really with the weight that the chief special master gave to that evidence, not with it having actually been ignored. Because you can see it's clearly referenced in his opinion. And he analyzed in some detail Dr. Lefkowitz's theories. Absolutely. And Dr. Steinman as well, I think. I would concur. And I think that it's important to note, this case sort of started out as a POTS case, a postural orthostatic tachycardia syndrome. The chief special master went through her detailed history and he noted that none of her treating providers ever diagnosed her with POTS. And it's notable, I think at least, that Dr. Lefkowitz, her treating cardiologist in 2017, indicated that he did not believe her symptoms were consistent with POTS. She was also, during one of her hospitalizations, she participated in a consultation with Dr. Nash, who is an infectious disease and pulmonary expert. He also indicated that her symptoms he did not believe were consistent with POTS or with significant autonomic dysfunction. And I think perhaps the most persuasive evidence in this particular case is that she was evaluated by experts in dysautonomia at the New York University Dysautonomia Center. So she was seen and underwent the tilt table testing, all of the autonomic functioning testing. And those experts who were also provided with her medical history, this occurred approximately three months after her HPV vaccine, those experts did not diagnose POTS. They did not diagnose inappropriate sinus tachycardia and they did not indicate that she had a dysfunctional autonomic system. Instead, they, receiving her, reviewing her medical history, and as it was reported by her mother and herself, indicated they counseled her that repeated panic attacks can result in reuptake of epinephrine and that can subsequently be stimulated by any sympathetic activation. So they referenced even exercise can kind of essentially panic attacks can beget more panic attacks was my understanding. And so their recommendation was for cognitive behavioral therapy, for yoga or breathing exercises. And they also recommended she consider taking a beta blocker specifically to help her with stressful situations. Counsel, to affirm here, can we reach either the causation issue or the injury issue? I mean, we don't need to reach both? That is correct. That is correct. Either if this court upholds either the finding that the petitioner failed to demonstrate that she suffered a vaccine injury or failed to show a reliable causal theory, either of those would be fatal to the petitioner's claim. And just one other quick point, which is your friend's concern about the failure to grant a hearing in this case. Do we have any cases that deal with how we evaluate that? We do. Vaccine rule 8D, I believe, specifically authorizes a special master to decide a case without a hearing. But additionally, that issue was considered and I believe it's referenced in the appendix 61. He discusses his decision not to hold a hearing in this case and cites to Kreisenbeck, which is his Federal Circuit opinion from 2020. So there's no, as long as the parties have a full and fair opportunity to present their case, it's within the court's discretion, the special master's discretion, whether to hold a hearing. Are there any further questions? Thank you. Thank you very much. Thank you. Unless there are questions for me, I don't have anything else to add. I would just be repeating what I already said. Thank you. We thank both sides. The case is submitted.